# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAUREL PAIGE BLOM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-514-EWD** |
| **CAROLYN W. COLVIN, ACTING**<br>**COMMISSIONER OF SOCIAL SECURITY** | **CONSENT CASE** |

## RULING and ORDER[1]

Plaintiff Laurel Paige Blom ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner"), denying her application for Title XVI supplemental security income. The parties here consented to proceed before a United States Magistrate Judge[2] and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).[3] For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED WITH PREJUDICE**.

### I. Procedural Background

According to the Commissioner, Plaintiff filed prior Title II and Title XVI applications for disability benefits, which were initially denied on March 8, 2012.[4] Plaintiff's prior Title XVI application was also denied after a hearing by an Administrative Law Judge ("ALJ") on February

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."
[2] R. Doc. 7.
[3] R. Doc. 8.
[4] AR p. 9.

27, 2013. No appeal was taken from the prior denials, which are now considered final and binding.[5]

On October 10, 2013, Plaintiff filed a second Title XVI application for supplemental security income benefits, alleging disability beginning June 1, 2011.[6] The claim was initially denied on January 31, 2014[7] and Plaintiff filed a request for a hearing on February 21, 2014.[8] A hearing was held on October 16, 2014 at which Plaintiff, represented by counsel, appeared and testified.[9] A vocational expert, Kasey C. Suggs, also appeared and testified.[10] An unfavorable decision was rendered by the ALJ on April 17, 2015.[11] On May 7, 2015, Plaintiff appealed the ALJ's decision.[12] On July 1, 2016, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision.[13]

On August 3, 2016, Plaintiff timely filed a Complaint in this Court.[14] Accordingly, Plaintiff exhausted her administrative remedies with regard to her application before filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *See,* 20 C.F.R. § 404.981.

## II. Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*,

---

[5] AR p. 9.
[6] AR pp. 60-62; *See*, AR p. 43.
[7] AR pp. 43-48.
[8] AR pp. 71-73.
[9] AR pp. 22-42.
[10] AR pp.22-24, 38-41. Although the vocational expert is referred to as "Ms. Subs" in the transcript of the hearing and no first name is provided, the ALJ's April 17, 2015 decision states that the vocational expert's name is "Kasey C. Suggs." AR p. 9.
[11] AR pp. 6-21.
[12] AR p. 5.
[13] AR pp. 1-4.
[14] R. Doc. 1.

402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). However, the substantial evidence test requires more than a search of the record for evidence supporting the ALJ's findings and must take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.

*Burkhardt v. Comm'r of Soc. Sec. Admin.*, 2009 WL 3849617, at *8 (N.D. Tex. Nov. 16, 2009) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)).

### III. The ALJ's Disability Determination

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505, 416.905. In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See,* 20 C.F.R. § 404.1520(a)(4). Using the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ initially noted that because Plaintiff's current Title XVI application for benefits involves the same party, facts and issues as her prior Title XVI application, the doctrine of *res judicata* applies for the period of June 1, 2011 through February 27, 2013, the date that the prior application was denied by an ALJ.[15] The ALJ explained that, "To that end, the undersigned declines to consider this period of time as claimant's subsequent application has arisen out of the same title of the Social Security Act (20 CFR 404.957(c)(1)). The determination on the claimant's prior applications are not being reopened and revised because good cause is not established"[16]

Proceeding to the sequential analysis, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act since October 10, 2013, the date the application was filed.[17] At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 10, 2013, the application date.[18] At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity and degenerative disc disease of the lumbar and cervical spine.[19] At step three of the analysis, however, the ALJ found that Plaintiff's impairments did not meet or medically equal the required criteria for any listed impairment.[20] The ALJ noted that she had considered "the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations" and found that Plaintiff did not "meet or medically equal the required criteria for and of the impairments listed under section 1.01, Category of Impairments, Musculoskeletal System, specifically Listing 1.04, Disorders of the spine; as well as any of the other relevant listed impairments."[21] The ALJ also considered Plaintiff's impairment of obesity and concluded that,

---

[15] AR p. 9.
[16] AR p. 9. The ALJ's decision not to reopen Plaintiff's prior application and to not consider the overlap in time between Plaintiff's prior application and this application was not a basis for Plaintiff's appeal.
[17] AR p. 10.
[18] AR p. 11.
[19] AR p. 12.
[20] AR p. 12.
[21] AR p. 12.

"The signs, symptoms, and history of treatment presented in the evidence of record are inconsistent with any impairments of listing-level severity."[22]

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a), except that she could not climb ladders, ropes, and scaffolds and could only occasionally stoop, kneel, crouch, crawl and reach overhead.[23]  The ALJ further found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[24]  Based on the RFC determination and the testimony of a vocational expert, the ALJ found that Plaintiff could perform past relevant work at step four of the analysis.[25]  Specifically, the ALJ found that Plaintiff is capable of performing past relevant work as a skip tracer, which does not require the performance of work-related activities precluded by Plaintiff's RFC.[26]  Because Plaintiff could perform past relevant work, the ALJ concluded that Plaintiff was not disabled from October 10, 2013, the date the application was filed, through April 17, 2015, the date of the ALJ's decision.[27]

## IV. Plaintiff's Allegations of Error

On appeal, Plaintiff alleges that the ALJ committed reversible error by failing to include any limitations in the RFC determination regarding Plaintiff's reduced grip strength and by not

---

[22] AR p. 12.
[23] AR p. 12.
[24] AR p. 13.
[25] AR p. 16.
[26] *Id.*
[27] AR p. 25.

properly evaluating Plaintiff's credibility.[28]  The Commissioner maintains that the decision to deny

Plaintiff benefits is supported by substantial evidence and should be affirmed.[29]

## V. Analysis

### A. Substantial Evidence Supports the ALJ's RFC Determination

In her first assignment of error, Plaintiff asserts that the ALJ erred by not including any

limitations in the RFC determination regarding her reduced grip strength.  Plaintiff claims that the

record "is replete with mentions of decreased grip strength in the right upper extremity,"[30] and

points to a functional capacity assessment by Dr. Joseph Turnipseed, in which he opined that

Plaintiff "had no to very little ability to finger with the right hand, very little ability to perform

gross manipulative movements with the right hand, and could only occasionally perform those

movements with the left."[31]  Despite the evidence of limitations in the fields of fingering and gross

manipulative movements, Plaintiff asserts that the only limitation in the RFC determination is for

"occasional overhead reaching."  Based on the substantial evidence of record regarding her

reduced grip strength, which "would clearly impact her ability to function in any competitive work

situation," Plaintiff argues the RFC determination is not supported by substantial evidence.[32]

In response, the Commissioner asserts that the ALJ properly based the RFC determination

on the record as a whole and that substantial evidence supports that determination.[33]  The

Commissioner argues that Plaintiff's position that a reduction in grip strength automatically

established a reduced ability to finger is incorrect and that Plaintiff has not shown that she would

be unable to perform gross manipulation of objects weighing 10 pounds or less, as specified in the

---

[28] R. Doc. 10 at 5-7.
[29] *See generally*, R. Doc. 14.
[30] R. Doc. 10 at 5 (*citing* AR pp. 48-58).
[31] R. Doc. 10 at 5 (*citing* AR p. 13).
[32] R. Doc. 10 at 5.
[33] R. Doc. 14 at 4.

definition of sedentary work.[34]  The Commissioner contends that the lack of treatment records and Plaintiff's reported daily activities both undermine her claim that she had fingering limitations. The Commissioner further asserts that the ALJ properly declined to credit the portion of Dr. Turnipseed's opinion regarding Plaintiff's fingering limitations because the opinion was unsupported and appeared to be based on Plaintiff's subjective complaints rather than objective clinical findings.[35]  As such, the Commissioner posits that the evidence as a whole does not support more functional limitations than those found by the ALJ and asks the Court to affirm the RFC determination.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.  *Leggett*, 67 F.3d at 564.  Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision.  *Johnson*, 864 F.2d at 343-44.

---

[34] R. Doc. 14 at 5 (*citing* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying certain articles like docket files, ledgers, and small tools.")).
[35] R. Doc. 14 at 7.

Here, the ALJ's RFC determination is supported by substantial evidence and Plaintiff's argument that the ALJ should have included a fingering limitation in her RFC determination is unpersuasive. In reviewing the medical evidence of record, the ALJ found that Plaintiff sought treatment for complaints of neck and back pain prior to the October 10, 2013 application date.[36] According to the ALJ, a November 30, 2012 lumbar spine MRI showed evidence of mild disc desiccation and facet degenerative joint disease at L2-L3 and L3-L4 and evidence of severe disc desiccation with disc height loss and moderate facet degenerative joint disease at L4-L5 and L5-S1.[37] The MRI also revealed an annular tear and moderate central canal stenosis at L4-L5 and mild bilateral foraminal stenosis at L5-S1.[38] The ALJ found that Plaintiff's physical examinations "also returned some objective findings to support exertional, postural, and reaching limitations."[39] Plaintiff was subsequently treated at the Spine Diagnostic & Pain Treatment Center in March 2013, June 2013, and September 2013, and her physical examinations returned findings of pain with extension and bilateral paraspinous tenderness during examinations of the cervical spine and pain with all range of motion of the lumbar spine.[40] The physical examinations also showed that Plaintiff had a mildly antalgic gait, right lower extremity weakness, diminished sensation in the L4-L5 dermatomal distribution on the right, and weak right hand grip.[41]

The ALJ further found that Plaintiff sought treatment for neck and back pain on only three occasions after the October 10, 2013 application date. In December 2013, Plaintiff returned to the Spine Diagnostic & Pain Treatment Center with complaints of lower back pain, right lower extremity pain, neck pain, right upper extremity pain, and weakness in her right hand and leg.[42]

---

[36] AR p. 13 (*citing* AR pp. 195-205, 237-310).
[37] AR p. 13 (*citing* AR p. 173).
[38] *Id.*
[39] AR p. 13.
[40] AR pp. 13-14.
[41] AR p. 14.
[42] AR p. 14.

The ALJ found that Plaintiff's physical examination again showed paraspinous tenderness of the cervical spine and lumbar spine, right lower extremity weakness, weak right hand grip, mildly antalgic gait, and diminished sensation in the L4-L5 dermatomal distribution on the right.[43] During the December 2013 visit, Plaintiff also indicated that she was unable to see a surgeon because she had no insurance. In March and June of 2014, Plaintiff was treated by Dr. John Burdine at the Spine Diagnostic & Pain Treatment Center, who noted findings of cervical spine pain with range of motion, lumbar spine pain with range of motion and positive straight leg raise testing on the right.[44]

The ALJ found that the record reflected no additional medical treatment after June 2014. However, after the administrative hearing on October 16, 2014, Plaintiff underwent a consultative examination by Dr. Donald Faust in January 2015.[45] According to the ALJ, Dr. Faust noted complaints of right hip numbness that radiated to her thigh and foot, as well as finger swelling and numbness. Upon examination, Plaintiff was able to walk well and had no paraspinous spasm, although she was tender in the lumbar spine and sacrum. Plaintiff's physical examination also returned findings of numbness in her right index finger, right thumb and left thumb and decreased right grip strength, but normal strength of the biceps, triceps and deltoids.[46] Examination of Plaintiff's lower extremities was also positive for numbness on the posterior and lateral border of the right hip distally, as well as medially on the right knee distally. However, Dr. Faust noted that Plaintiff moved about well and that straight leg raise testing was negative in the seated position and positive bilaterally in the supine position.[47]

---

[43] AR p. 14 (*citing* AR pp. 212-29).
[44] AR p. 14 (*citing* AR pp. 214, 217).
[45] AR p. 14.
[46] AR p. 14.
[47] AR p. 14.

Reviewing the opinion evidence of record, the ALJ gave "considerable weight" to Dr. Turnipseed's September 3, 2014 Functional Capacity Assessment "because the essentially sedentary residual functional capacity is consistent with the objective evidence of degenerative disc disease and obesity, as well as with the findings of right side weakness during the claimant's physical examinations."[48] The ALJ declined to give great weight to Dr. Turnipseed's assessment because Plaintiff's physical examinations "provide no grip strength measurements to support the limitations of no to very little fingering activities with the right upper extremity or to support the assessment of very little grasping activities with the right upper extremity."[49] The ALJ also concluded that Dr. Turnipseed appeared to rely on Plaintiff's subjective complaints, rather than physical or clinical findings on examination.[50] The ALJ pointed out that all of the clinical evaluations of record were conducted by Brooke Vincent, a physician's assistant, and countersigned by Dr. Burdine, with Dr. Turnipseed's name appearing as a provider only on the notes from Plaintiff's December 2013 evaluation.[51] The ALJ also noted that Plaintiff testified that she does not see Dr. Turnipseed during each visit and that she was unable to remember the last time she saw him.[52] Based on the foregoing, the ALJ concluded that the record does not establish that Dr. Turnipseed has an established history of treating Plaintiff.

While the opinion of a treating physician should generally be accorded great weight,[53] an ALJ may give less weight to a treating physician's opinion when good cause is shown, as is the

---

[48] AR p. 15 (*See*, AR pp. 231-34).
[49] AR p. 15.
[50] *Id.*
[51] AR p. 15 (*citing* AR p. 221); *See*, AR pp. 212-29.
[52] AR p. 15; *See*, AR pp. 31-34.
[53] For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that

case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Although neither Plaintiff nor the Commissioner address whether Dr. Turnipseed is a "treating physician," the ALJ has shown good cause for giving only limited weight to Dr. Turnipseed's Functional Capacity Assessment. First, the ALJ explicitly found that the record does not establish that Dr. Turnipseed has an established history of treating Plaintiff. As the ALJ points out, the only mention of Dr. Turnipseed in the treatment notes from Plaintiff's three visits to the Spine Diagnostic & Treatment Center in December 2013,[54] March 2014, [55] and June 2014[56] is in the December 11, 2013 notes, in which he is listed as Plaintiff's "Provider."[57] The Fifth Circuit has held that when there is no longitudinal pattern of care by a treating source, an ALJ is not required to give that professional's opinion greater weight. See, *Clayborne v. Astrue*, 260 Fed. App'x 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor). Here, the record indicates that Dr. Turnipseed only saw and examined Plaintiff once during the course of her treatment at the Spine Diagnostic & Treatment Center. As such, the ALJ was not required to give Dr. Turnipseed's opinion great weight.

---

medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because Plaintiff's claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.
[54] AR pp. 221-23.
[55] AR pp. 216-20.
[56] AR pp. 213-15.
[57] AR p. 221.

Additionally, Dr. Turnipseed's Functional Capacity Assessment was a form on which Dr. Turnipseed checked boxes or circled responses regarding Plaintiff's functional abilities and limitations. In the assessment, Dr. Turnipseed circled "None to very little" and "Very little" in response to questions regarding the frequency with which Plaintiff can perform fingering type movements and gross manipulative movements with her right upper extremity during the course of an eight-hour workday.[58] The assessment provides no reason as to why Dr. Turnipseed circled these responses. "It is well-established law that the ALJ is entitled to accord little or even no weight to similar 'check-the-box' forms." *Johnson v. Soc. Sec. Administration*, CV 15-4811, 2016 WL 6902115, at *4 (E.D. La. Sept. 23, 2016), *report and recommendation adopted*, CV 15-4811, 2016 WL 6892878 (E.D. La. Nov. 23, 2016); *See, Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight but reserving that determination for the ALJ); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . . .").[59] Accordingly, the ALJ was entitled to accord little weight to Dr. Turnipseed's Functional Capacity Assessment.

The ALJ's RFC determination is also supported by substantial evidence of record. Although Plaintiff demonstrated "weak right hand grip" during the physical examinations conducted at the Spine Diagnostic & Treatment Center on December 11, 2013,[60] March 13, 2014,[61] and June 12, 2014,[62] the ALJ explained that, "The findings of decreased sensation and weakness

---

[58] AR p. 233.
[59] Dr. Turnipseed's Functional Capacity Assessment seems to suggest that additional testing would be beneficial to his determination, as he states, "recommend updating MRIs, as she has not had any recent studies." AR p. 234.
[60] AR p. 223.
[61] AR p. 217.
[62] AR p. 214.

of the right upper and right lower extremities also support limitations on the claimant's standing, walking, lifting, and overhead reaching."[63]  The ALJ further explained that, "Considering the evidence of *right sided weakness* and the evidence of obesity, the undersigned also finds it reasonable that the claimant can engage in no climbing of ladders, ropes, and scaffolds."[64]  Thus, the ALJ included limitations in the RFC determination to account for Plaintiff's decreased grip strength in her right hand.  The RFC determination also takes into account the other medical evidence of record, including Dr. Faust's report from his consultative examination of the Plaintiff on January 20, 2015.[65]  The ALJ found that although Dr. Faust reported that he could measure no specific impairment and that he would not restrict Plaintiff, Dr. Faust limited Plaintiff to light work activity.[66]  Based on the inconsistent opinions provided in Dr. Faust's consultative examination report and medical source statement, the ALJ gave little weight to Dr. Faust's opinion, but stated that she considered Dr. Faust's clinical evaluation along with the other evidence of record.[67]  The ALJ also gave no weight to the state agency's physical RFC assessment, finding that it was not prepared or signed by a health care professional.[68]  A review of the state agency report shows that the physical RFC assessment is signed by "Barbara Collins, SDM,"[69] who is also listed as the "Disability Adjudicator/Examiner."[70]

---

[63] AR p. 14.
[64] AR p. 14 (emphasis added).
[65] AR p. 16 (*citing* AR pp. 312-21).
[66] AR p. 16 (*citing* AR pp. 316-21).
[67] AR p. 16.
[68] AR p. 16 (*citing* AR pp. 43-59).
[69] AR p. 57.
[70] AR pp. 48, 59.  The ALJ also considered the report from a psychological consultative examination conducted by Dr. Sandra Durdin on January 20, 2014.  AR p. 16; *See*, AR pp. 186-89.  During the examination, Plaintiff reported that she completes adaptive living tasks, prepares food, shops, and does chores, which the ALJ concluded are activities consistent with a sedentary level of exertion.  According to the ALJ, Dr. Durdin noted that Plaintiff was resistant to testing and refused or quit testing at times.  Despite the noted lack of cooperation and Dr. Durdin's indication that the results of the tests were invalid as a result of Plaintiff's resistance to testing, Dr. Durdin diagnosed Plaintiff with "Anxiety Due to Another General Medical Condition" and assessed moderate limitations on Plaintiff's ability to withstand routine demands, pressure, or expectations based on her angry and irritable presentation.  AR p. 16. (*citing* AR pp. 186-89).  The ALJ assigned little weight to Dr. Durdin's opinion, finding other medical evidence of record

Based upon the foregoing, the ALJ did not commit reversible error by failing to include specific fingering limitations in Plaintiff's RFC determination and the ALJ's RFC determination is supported by substantial evidence.[71]

### B. The ALJ's Credibility Determinations Are Supported By Substantial Evidence

In her second assignment of error, Plaintiff asserts that the ALJ erred in her credibility determination by relying on Plaintiff's lack of treatment and Plaintiff's statements to Dr. Faust regarding her functional abilities.[72]  Plaintiff contends that she received regular medical treatment at the Spine Diagnostic & Pain Treatment Center and that her lack of insurance prevented her from following up with a surgeon or from getting additional steroid injections.  Plaintiff claims that the ALJ focused on her failure to seek free care at Lallie Kemp Medical Center ("Lallie Kemp"), even though Plaintiff told her doctor that she was unable to wait the eight hours required to receive emergency treatment at Lallie Kemp.  Plaintiff also claims that she told her counsel that she did not want to receive care at Lallie Kemp because her husband had received very bad care at Lallie Kemp, which allegedly involved an intoxicated doctor and the need for corrective surgery.[73] Plaintiff argues that her failure to accept free care at Lallie Kemp, for reasons separate from the severity of her impairment, should not impact her credibility.  In response, the Commissioner contends that the ALJ did not rely exclusively on either Plaintiff's lack of treatment or her reported daily activities, but properly considered them both as factors in the context of her evaluation of

---

[71] reflects few, if any, complaints of anxiety to corroborate Dr. Durdin's diagnosis.  The ALJ noted that Plaintiff has not obtained mental health treatment and her records from the Spine Diagnostic & Pain Treatment Center provide no objective evidence to support a finding that anxiety is a medically determinable impairment.  AR p. 16.

[71] Additionally, during the October 16, 2014 administrative hearing the ALJ asked the vocational expert whether Plaintiff could return to her past relevant work if "she could only occasionally use her right dominant hand for gross manipulation or gripping."  AR p. 39.  The vocational expert testified that while Plaintiff would not be able to return to her past relevant work, she could perform other jobs, including surveillance system monitor, if Plaintiff had "restrictions on the gross hand."  AR pp. 39-40.  The vocational expert's testimony further supports the ALJ's decision to not include any specific fingering limitations in Plaintiff's RFC determination.

[72] R. Doc. 10 at 6-7.

[73] R. Doc. 10 at 6.

Plaintiff's pain symptoms.[74]  The Commissioner asserts that the objective medical evidence, as reviewed by the ALJ, does not support Plaintiff's claim that her pain symptoms were incapacitating, especially because Plaintiff failed to seek consistent treatment for her alleged pain.[75]

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects.  20 C.F.R. § 404.1529(c)(1).  Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider.  See, 20 C.F.R. § 404.1529(c).   The Fifth Circuit has held that the ALJ is not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly favors the claimant."  *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  Ultimately, "The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence."  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (citation omitted).  Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* (*quoting* 42 U.S.C. § 423(d)(5)(A)).

Here, the ALJ began her credibility assessment by acknowledging that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."[76]  Nonetheless, the ALJ found Plaintiff's statements concerning the intensity, persistence and

---

[74] R. Doc. 14 at 9.
[75] R. Doc. 14 at 10.
[76] AR p. 13.

limiting effects of those symptoms were not entirely credible. Before making this determination, the ALJ considered Plaintiff's testimony from the October 16, 2014 administrative hearing regarding her daily activities. At the hearing, Plaintiff testified that she cannot work because she experiences migraine headaches, which she attributes to "damage" in her neck and back.[77] Plaintiff testified that she has problems with her legs, which "jerk" at night and cause difficulty sleeping.[78] Plaintiff also testified that she has lost strength in her hands and that she is on medication for her neck and back pain.[79] Plaintiff testified that she went to physical therapy for four to six months in 2009, she received ESIs, receiving the last ESI two years prior to the hearing, and that her last MRI was performed in January 2013[80]

With respect to her daily activities, Plaintiff testified that she spends most of her time in a recliner and that she watches television and reads.[81] Plaintiff testified that she tries to help around the house as much as she can, but her daughter does most of the housework.[82] Plaintiff also testified that her husband and daughter do most of the cooking and shopping, but that she does some cooking and occasionally goes shopping with her husband, daughter and mother.[83] Plaintiff testified that she does not drive "unless I absolutely have to"[84] and that she is able to walk less than a block, stand for seven to ten minutes, sit for seven to ten minutes and can lift one to two pounds.[85] Plaintiff further testified that her right side is weaker than her left side and that she has

---

[77] AR p. 26.
[78] AR pp. 26, 36.
[79] AR p. 26.
[80] AR pp. 26-27.
[81] AR pp. 29-30.
[82] AR p. 29.
[83] AR p. 29.
[84] AR p. 30.
[85] AR pp. 30-31.

difficulty picking up and holding utensils, she drops coins, and she has difficulty opening and closing doors.[86] Plaintiff also testified that she takes medication as prescribed.[87]

The ALJ further found that in the function report of record, Plaintiff indicated that she has difficulty standing, sitting, and walking for long periods and has difficulty holding things in her right hand.[88] Plaintiff also indicated that she has problems dressing and bathing due to loss of balance, but that she can prepare light meals, sandwiches and salads.[89] Plaintiff reported that someone else does most of the household chores.[90] Plaintiff also indicated that she is able to lift three to five pounds and walk for 10 to 15 minutes.[91]

After considering Plaintiff's testimony and the medical evidence of record, the ALJ concluded that Plaintiff's treatment history and the daily activities reported during her consultative examination with Dr. Faust in January 2015 do not support her allegations regarding the severity and limiting effects of her pain symptoms.[92] The ALJ reiterated that Plaintiff had only sought treatment for pain symptoms on three occasions since her October 10, 2013 application date, and that her treatment has been conservative. The ALJ pointed out that during the administrative hearing on October 16, 2014, Plaintiff admitted that she had not attended physical therapy since 2009, which was consistent with the medical evidence of record.

The ALJ further found that while a March 2014 treatment note indicates that Plaintiff's lumbar spine symptoms had previously responded to ESIs, the medical evidence of record and the hearing testimony indicated that Plaintiff had not received an ESI since 2011.[93] The ALJ noted

---

[86] AR pp. 34-35.
[87] AR p. 35.
[88] AR p. 13 (*citing* AR pp. 128-135).
[89] AR pp. 129-130.
[90] AR p. 130.
[91] AR p. 133.
[92] AR p. 15.
[93] AR p. 15 (*citing* AR pp. 22-42, 212-29); *See,* AR pp. 26-27, 216, 219.

that the record showed no follow-up treatment with a surgeon, despite at least one referral for a surgery evaluation.[94]  The ALJ found that although Plaintiff's treatment records and testimony indicate that she has been unable to seek medical treatment because she does not have insurance, Dr. Burdine noted that Plaintiff did not seek free care at Lallie Kemp.[95]  Although Plaintiff informed Dr. Burdine that she could not tolerate an eight hour wait at Lallie Kemp due to her pain, the ALJ found that the record contains no evidence of emergency room treatment to support a finding that Plaintiff's pain was severe enough to require immediate attention.[96]  Based on the foregoing treatment history, the ALJ found Plaintiff's allegations regarding the severity of her pain symptoms to be less than fully credible.

The ALJ also found that Plaintiff's testimony at the administrative hearing that she spends most of her day in a recliner and does little housework is inconsistent with her report that she cared for her disabled husband at the time of Dr. Faust's January 20, 2015 consultative examination.[97]  According to the ALJ, Dr. Faust noted that Plaintiff was "active and independent and able to keep house."[98]  Dr. Faust also reported that he could "measure no specific impairment" and that he "would not restrict [Plaintiff]."[99]  Based upon the information provided during the consultative examination and Dr. Faust's assessment of Plaintiff's daily activities based on that information, the ALJ found "the limited activities of daily living reported by the claimant at the hearing are inconsistent with other evidence of record and are not fully credible."[100]

A review of the record shows that the ALJ's credibility determination is supported by substantial evidence.  As the ALJ pointed out, Plaintiff only sought treatment for her neck and

---

[94] AR p. 15 (*citing* AR pp. 168-84, 212-29); *See,* AR pp. 175, 218.
[95] AR p. 15 (*citing* AR pp. 213, 215, 218).
[96] AR p. 15 (*citing* AR p. 213).
[97] AR p. 15 (*citing* AR pp. 312-21); *See*, AR p. 312.
[98] AR p. 15 (*quoting* AR p. 314).
[99] *Id.*
[100] AR p. 15.

back pain three times in the 18-month period between the date of her application on October 10, 2013 and the date of the ALJ's opinion on April 17, 2015. Although Plaintiff alleges that her failure to seek treatment was due to her lack of insurance and inability to pay, the medical evidence shows that Dr. Burdine recommended that she seek free care at Lallie Kemp during her visits to the Spine Diagnostic & Pain Treatment Center on March 13, 2014 and June 12, 2014.[101] Dr. Burdine's treatment notes from June 12, 2014 state that Plaintiff chose not to go to Lallie Kemp because "she does not want to wait 8 hours (cannot handle this due to the pain)."[102] As the ALJ points out, there is no medical evidence of record that Plaintiff sought any emergency care for her pain, which would indicate that her pain was not severe enough to require immediate attention. Additionally, Plaintiff's testimony regarding her daily activities is contradicted by the findings from Dr. Faust's physical examination of Plaintiff on January 20, 2015. According to Dr. Faust's consultative examination report, Plaintiff reported that she cares for her husband who is disabled.[103] Plaintiff's testimony regarding her limitations contradicts Dr. Faust's findings that Plaintiff "has a very viable range of motion and bizarre sensation distribution, and flat grip strength dynamometer readings. At this point, I can measure no specific impairment."[104] Plaintiff's testimony also contradicts Dr. Faust's notation that Plaintiff "is active and independent and able to keep house and I would not restrict her."[105]

Based on the foregoing, the ALJ's credibility determination is supported by substantial evidence and does not constitute reversible error.

---

[101] AR pp. 215, 218.
[102] AR p. 213.
[103] AR p. 312.
[104] AR p. 314.
[105] Id.

### VI. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the application for supplemental security income filed by plaintiff, Laurel Paige Blom, is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on August 28, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**